IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | * | |
| | * | |
| v. | * | Criminal No. **PJM 13-0129** |
| | * | |
| **LARRY L. BARRINGER**, | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Larry L. Barringer has filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 84, the Government has responded in Opposition, ECF No. 87, and Barringer has replied, ECF No. 89. Barringer filed a supplement to his Motion on May 6, 2020. ECF No. 90. For the reasons set forth below, the Court **DENIES** the Motion.

I.

On December 12, 2013, Barringer pled guilty to Conspiracy to Pass and Utter Counterfeit Obligations of the United States, in violation of 18 U.S.C. § 371, and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). ECF No. 25. On August 4, 2014, the Court sentenced him to 60 months' imprisonment with credit for time served, and three years of supervised release. ECF No. 48. Barringer was released from custody and his supervised release commenced on July 10, 2017. ECF No. 54.

On October 29, 2019, Barringer appeared before this Court for a hearing on alleged violations of the terms of his supervised release. ECF No. 74. He made knowing and voluntary admissions as to four violations: committing a crime in Montgomery County, MD by passing counterfeit bills (Violation 1); leaving the judicial district without permission (Violation 2); being dishonest with his supervising officer regarding his travel outside the district (Violation 3); and

opening a line of credit without the approval of his supervising officer (Violation 6). The Government did not go forward on additional alleged violations. ECF No. 76. In consequence, the Court revoked Barringer's supervised release and sentenced him to 20 months' imprisonment with credit for time served, and recommended that he be designated to the Federal Medical Center in Butner, NC. *Id.* The Court terminated his supervised release in unsatisfactory status. *Id.*

Since then, according to the Parties, Barringer has been in the custody of the U.S. Marshal Service at the Metropolitan Transition Center ("MTC") in Baltimore, MD. ECF Nos. 79 and 87. He has been awaiting transport to the Federal Medical Center in Devens, MA ("FMC Devens") since the October 29, 2019 hearing, but at present, is not scheduled to be transferred due to his medical conditions and the COVID-19 pandemic. *Id.* Barringer, who is 60 years old, suffers from, among other ailments, coronary artery disease, End-Stage Renal Disease, diabetes, hypertension, and obesity. ECF No. 79. He has served approximately seven months of his 20 month sentence.

On March 26, 2020, Barringer, through counsel, filed a Motion for Temporary Release on the basis that the COVID-19 outbreak poses a large risk to him due to his medical conditions. ECF No. 79. The Government responded the same day, ECF No. 80, and the Court denied the motion the next day, ECF No. 81.

On April 1, 2020, Barringer filed an Emergency Motion for Order Modifying Judgment to Allow Remainder of Sentence to Be Served on Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 84.[1] The Government filed a response in Opposition, ECF No.

---

[1] It is within the discretion of the Bureau of Prisons, under certain circumstances, to place an inmate on home confinement. *See* 18 U.S.C. § 3624; *see also United States v. Williams*, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020); *United States v. Gray*, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (finding "defendant must seek home confinement through the BOP's administrative system"); *United States v. Baker*, 2020 WL 2430945, at *1 (W.D.N.C. May 12, 2020). In view of this, and because Barringer has not argued why the Court can grant this relief, it seems more appropriate for the Court to approach the motion as a straightforward motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

87, and Barringer replied on April 17, 2020, ECF No. 89. The Motion is now ripe for the Court's consideration.

II.

Until recently, courts lacked authority to entertain compassionate release requests of defendants except upon motion of the Director of the Bureau of Prisons. *See, e.g.*, *United States v. Fletcher*, 2014 WL 12824234 (D. Md. Apr. 14, 2014). However, the 2018 First Step Act, among other things, amended § 3582(c) so as to allow courts to consider compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

If a defendant has exhausted his administrative remedies, a court "may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that… (i) extraordinary and compelling reasons warrant such a reduction." *Id.* The defendant generally bears the burden of establishing that a sentence reduction is warranted. *United States v. Stowe*, 2019 WL 4673725 at *2 (S.D. Tex. Sept. 25, 2019).

In 28 U.S.C. § 994(t), Congress delegated to the U.S. Sentencing Commission the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." In U.S.S.G. § 1B1.13, the Sentencing Commission provided examples of "extraordinary and compelling reasons" and mandated that the defendant must also not present "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and that the reduction must be otherwise consistent with U.S.S.G. § 1B1.13.

III.

Before a court evaluates the merits of the motion, the defendant must demonstrate that he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Both the Government and Barringer have read into this statute a futility exception under *Ross v. Blake*, in which a court can bypass the exhaustion requirement if the administrative remedies are effectively "unavailable" or if the administrative process "operates as a simple dead end." 136 S. Ct. 1850, 1859-60 (2016).

The Fourth Circuit has not yet opined on the issue, but other judges of this district have held a district court cannot read such an exception into 18 U.S.C. § 3582(c)(1)(A) because the exhaustion requirement is contained in the statute, and contains no exception, unlike the exhaustion requirement of the Prison Litigation Reform Act at issue in *Ross v. Blake*. *See United States v. Underwood*, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (holding "the Court likewise may not create an exception not grounded in the statute itself"); *United States v. Osagbue*, 2020 WL 1939713, at *1 (D. Md. Apr. 22, 2020) (finding the "statutory language is plain that this Court can entertain a defendant's motion only after the thirty-day waiting period or after defendant has exhausted all administrative rights, whichever is earlier"); *United States v. Wiggins*, 2020 WL 2126882, at *2 (D. Md. May 5, 2020) (finding the exhaustion requirement "may not be waived"); *see also United States v. Johnson*, 2020 WL 1663360, at *4 (D. Md. Apr. 3, 2020) (finding that the requirement is jurisdictional in nature and that even if it were not, "this Court will not read an exception into § 3582(c)(1) which does not exist").

Other district courts within the Fourth Circuit have held to similar effect, albeit for slightly

4

different reasons. *See United States, v. Thompson*, 2020 WL 2121371, at *4 (S.D.W. Va. May 5, 2020) (holding "[w]here a governmental agency has more expertise and resources to make a determination such as this, and the statute requires an expeditious exercise of that decision making, then it is wholly inappropriate for the court to intervene."); *United States v. Carroll*, 2020 WL 1976498, at *3 (D. S.C. Apr. 24, 2020) (finding that "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" in these circumstances). *But see Poulios v. United States*, 2020 WL 1922775, at *3 (E.D. Va. Apr. 21, 2020) (holding "the exhaustion requirement may be waived due to futility, inadequate relief, or undue prejudice"); *United States v. Feiling*, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (finding that a court could waive the exhaustion requirement but that the defendant did not demonstrate "the futility of exhaustion").

The circumstances here, however, differ from the circumstances in the above-cited cases. Barringer is apparently unable to lodge a request with the Bureau of Prisons because, although, he has been designated to FMC Devens, he has not yet been transferred and remains in the custody of the U.S. Marshal Service. Since he is not incarcerated at a Bureau of Prisons facility, there is no Bureau of Prisons warden to whom he can submit a request for a reduction in sentence. Simply put, the exhaustion of the administrative process is not only futile, it is complete because Barringer has done all he can to exhaust his administrative remedies. *See United States v. Norris*, 2020 WL 2110640, at *2 (E.D.N.C. Apr. 30, 2020) (finding that the defendant had exhausted his administrative remedies in similar circumstances).

IV.

The Court considers, then, whether Barringer has demonstrated "extraordinary and compelling reasons" for relief under 18 U.S.C. § 3582(c)(1)(A). The Government argues that

Barringer has not demonstrated "extraordinary and compelling reasons," as defined in U.S.S.G. § 1B1.13. While Barringer concedes that his circumstances are not "extraordinary and compelling" as defined in U.S.S.G. § 1B1.13, he claims that the Court is not constrained by the definitions set forth in U.S.S.G. § 1B1.13 and may conduct its own assessment of whether "extraordinary and compelling" reasons exist.

U.S.S.G. § 1B1.13 has not been updated since the passage of the First Step Act. *See United States v. Gagne*, 2020 WL 1640152, at *2 (D. Conn. Apr. 2, 2020). For example, it states that the Court may reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A)," which is clearly inconsistent with the current language of 18 U.S.C. § 3582(c)(1)(A) allowing the defendant to file a motion as well. As such, courts across the country, including this Court, have held that a district court is no longer constrained to find "extraordinary and compelling reasons" based on what is listed in U.S.S.G. § 1B1.13. *See United States v. Decator*, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020) (stating that while "Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence"); *see also United States v. Mel*, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Redd*, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020); *United States v. Haynes*, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases).

The Court is in accord with the judges of this district and many courts nationwide that, in light of the passage of the First Step Act, U.S.S.G. § 1B1.13 and BOP criteria are "helpful guidance," but that a court has independent discretion to determine whether there are "extraordinary and compelling reasons."

Barringer argues that, in his case, the combination of the COVID-19 outbreak and the threat of infection and the severe risk to him due to his medical conditions is an "extraordinary and compelling" reason, citing a string of cases, most of which are from outside of the Fourth Circuit, and not all of which are comparable to his situation. Since his last filing, there have been additional cases that supplement his argument, holding that there are "extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Harper*, 2020 WL 2046381, at *3 (W. D. Va. Apr. 28, 2020). *See also Mel*, 2020 WL 2041674, at *3 (finding "the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19, and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life-threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3582(c)(1)(A)").

The Court acknowledges that hypertension, diabetes, a chronic kidney disease, and extreme obesity (over 400 pounds), all conditions that Barringer claims to suffer from, may cause an individual—particularly someone 60 years of age—to be more susceptible to the effects of the virus. The Court also recognizes that COVID-19, a very serious disease, is spreading in prisons—federal and state—despite efforts to contain the spread. Barringer represents that there are now 22 total confirmed cases of COVID-19 at MTC, 21 involving court guards and personnel, and at least one involving an inmate, and that the number of cases is likely higher than what has been reported given the limited testing being performed. However, even if Barringer shows "extraordinary and compelling reasons" for compassionate release, he must also not present a danger to the community and his request must be measured against both guideline and statutory factors.

First, there is the guidance in U.S.S.G. § 1B1.13 that mandates that the defendant must also not present "a danger to the safety of any other person or to the community" and that the reduction must be otherwise consistent with U.S.S.G. § 1B1.13. Barringer is currently incarcerated for multiple violations of the terms of his supervised release, including the commission of a crime—the passing of counterfeit bills—despite having just served sixty-months for the very same conduct. Barringer argues that he does not pose a danger because "he is not a violent person, and if confined to his home there will be no appreciable risk he will pass counterfeiting bills or commit some other theft offense." ECF No. 89. He also argues that his self-interest is to remain at home to lower his own exposure to the risk of infection, given his health conditions and limited mobility, and that he will be supported by his fiancé.

But the Court is unpersuaded. Less than two years after he was released from custody, Barringer committed the very same crime for which he was previously incarcerated, was dishonest with the U.S. Probation Office as to his whereabouts and financial status, travelled frequently without permission, and disobeyed the terms of his supervised release, all while living with his fiancé and despite his purported limited mobility. The Court is simply not convinced that Barringer would not do so again, despite the risks of COVID-19. All this is to suggest that Barringer poses a danger to the Community.

V.

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court must also take into account the factors outlined in 18 U.S.C. § 3553(a). Those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" and (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

The Court has already analyzed the "nature and circumstances of the offense and the history and characteristics of the defendant" but would also note that the Pre-Sentence Report ("PSR") prepared for Barringer's 2014 sentencing indicated that he had a criminal history category of VI, with convictions for many crimes, violent as well as non-violent, including forging checks, credit card offenses, multiple counts of robbery, and theft, among others. ECF No. 40. As well, the PSR indicated that Barringer violated his terms of probation on multiple occasions. *Id.* The nature and circumstances of the original offense here, plus the history and characteristics of the defendant, strongly militate against Barringer's release.

The Court would also note that, due to the severity and the repetitive nature of Barringer's infractions, the Court imposed a sentence only four months less than the statutory maximum—20 months with credit for time served. ECF No. 76. Barringer has served slightly in excess of 7 months of the term, and with good-time credit, he appears to have about 10 months left to serve on his sentence. This would mean he has served little more than 50% of his sentence, after taking into account good-time credit.

V.

Taking all the foregoing into account, the Court concludes that Barringer has not served a term "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). Accordingly, Barringer's Motion for Compassionate Release, ECF No. 84, is **DENIED**.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**May 19, 2020**